**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**CASE NO: 6:22-cv-1475-WWB-DCI**

JAMES SERVIDORI, individually, and on
behalf of all others similarly situated,

    Plaintiffs,

v.

NOMI HEALTH, INC.,

    Defendant.
_____/

**JOINT MOTION FOR COURT APPROVAL OF FLSA COLLECTIVE
SETTLEMENT AGREEMENT AND REQUEST FOR ORDER OF DISMISSAL
WITH PREJUDICE**

Representative Plaintiff, JAMES SERVIDORI ("Representative Plaintiff" or "Servidori"), the Opt-In Plaintiffs, and Defendant, NOMI HEALTH, INC. ("Defendant") (Plaintiff and Defendant are collectively "the Parties") by and through undersigned counsel, hereby file this Joint Motion for Court Approval of FLSA Collective Settlement Agreement and Request for Order of Dismissal with Prejudice, as follows:

**I.    PROCEDURAL HISTORY**

On August 18, 2022, Plaintiff filed a Collective Action Complaint for Damages and Demand for Jury Trial against Defendant to recover allegedly unpaid federal overtime wages. *See* D.E. 1. The Collective Action Complaint alleges that Defendant violated the federal overtime provisions of the Fair Labor Standards Act ("FLSA") by failing to fully reimburse Couriers for the vehicle-related expenses they incurred in weeks where they worked over 40 hours which allegedly triggered overtime violations. *Id.* Plaintiff also alleges that Defendant

failed to pay the proper overtime premium when he and other Couriers worked over 40 hours in weeks where they also received non-discretionary bonus payments. *Id.* Plaintiff claims that several Couriers throughout the State of Florida were subject to these policies within the past 3 years. As a result of these alleged policies and practices, Servidori alleges the existence of 2 separate collectives: (1) a Vehicle Reimbursement Expense ("VRE") Collective; and (2) a Non-Discretionary Bonus ("NDB") Collective (together, the "Settlement Collectives"). *Id.*

Defendant filed its Answer and Affirmative Defenses on September 13, 2022, and vehemently denies that any violations were committed. *See* D.E. 16. After the filing of the operative Complaint, 3 other Couriers joined this lawsuit. *See* D.E. 11-1; D.E. 12-1; D.E. 13-1; D.E. 14-1. After an initial mediation failed in October 2022, to avoid the expense of protracted litigation, but without admitting that the members of the putative collective were, in fact, similarly situated, the Defendant agreed to conditional certification of the VRE Collective and NDB Collective. *See* D.E. 30. On April 10, 2022, the Court entered its Order granting conditional certification and authorizing Plaintiff's counsel to send court-approved notice to members of each putative collective from the past 3 years. *See* D.E. 51. At the close of the opt-in period, a total of 35 individuals (including Servidori) had joined the VRE Collective. A total of 33 individuals (including Servidori) had joined the NDB Collective.

Since expiration of the opt-in period, the Parties have engaged in an extensive amount of discovery and document production and review. Defendant produced hundreds of pages/electronic files of time records, payroll records, and mileage records which are relevant to the core issues in this case. These records resulted in both sides creating damage models which required the other side to evaluate the true strengths and weaknesses of their respective factual and legal positions. These damage models were exchanged, evaluated, critiqued, and

refined as more information was shared and exchanged by the Parties. Ultimately, these negotiations revealed that all sides had significant risks and variability in potential outcomes. Throughout the process the Parties have engaged in good-faith arm's length settlement negotiations.

Given the bona fide factual and legal disputes that exist, the Parties have negotiated an FLSA Collective Action Settlement Agreement ("the Agreement") through counsel—and through two mediations with an experienced FLSA mediator—and have reached an accord on all material terms. The Agreement affords collective-wide relief and was negotiated over a period of an entire year with Counsel for the Settlement Collectives keeping the Settlement Collectives timely informed of the negotiations. The negotiations were focused both on the representations of the Settlement Collectives and the data in the relevant documentation. Under the Agreement, Plaintiffs will receive a substantial portion of the contested wages, and liquidated damages currently claimed to be owed. A copy of the fully executed Agreement is attached and includes a chart with a breakdown of payments to members of each respective Settlement Collective. *See* **Exhibit A**. The settlement reached in this case provides Plaintiffs with fair and reasonable compensation for their FLSA claims. Moreover, the settlement reached in this case **does not** include impermissible confidentiality provisions or overly broad or pervasive releases applicable to the Settlement Collectives. Indeed, the Plaintiffs are only waiving their wage-related claims. Counsel for the Settlement Collectives is being compensated reasonable attorney's fees separate and apart from amounts paid to the Settlement Collectives. A full accounting of the reasonable hourly rates and extent of hours billed is attached for the Court's review. *See* Declaration of Jordan Richards, Esq. and accompanying lodestars attached as **Exhibit B**. Accordingly, the Parties respectfully request

that this Honorable Court grant their Joint Motion for Court Approval of FLSA Collective Settlement Agreement and Request for Order of Dismissal with Prejudice.

## II. SUMMARY OF THE SETTLEMENT TERMS

Defendant has agreed to create a settlement fund for each Settlement Collective in this case. *See* **Ex. A**. Defendant will issue payment to the VRE Settlement Collectives in the total amount of Fifty Thousand Dollars ($55,000.00). The amount each member of the VRE Collective will receive is indicated in a spreadsheet on Ex. A attached to the FLSA Collective Settlement Agreement. **Ex. A**. Defendant will issue payment to the NDB Settlement Collective in the total amount of Five Thousand Four Hundred Eight Dollars ($5,408.00). The amount each member of the NDB Settlement Collective will receive is indicated in a spreadsheet on Exhibit A attached to the FLSA Collective Settlement Agreement. *Id.*

Defendant has agreed to pay Plaintiff's counsel's reasonable attorney's fees and costs separate and without regard to the amount it has agreed to pay to each Settlement Collective. *See* **Ex. A**. Defendant will pay Plaintiff's counsel a total of Seventy Thousand Dollars ($70,000.00). *Id.* The Parties separately negotiated fair and reasonable attorney's fees based on the amount of time expended and the complexity of the litigation. The fees and costs do not impact and were negotiated without regard to the amounts paid to Plaintiffs. For present purposes, Defendant does not contest that the attorney's fees and costs are a fair and reasonable amount and were necessary for the prosecution of this action. Plaintiff's lead counsel, Jordan Richards, Esq. ("Mr. Richards") billed a reasonable hourly rate of $395.00 per hour. *See* Declaration of Jordan Richards, Esq. and accompanying lodestar attached as **Exhibit B**. Associate attorneys working on this case billed a reasonable hourly rate of $275.00 per hour. *Id.* Law Clerks working on this case billed a reasonable hourly rate of $150.00 per

hour. *Id.* Defendant does not oppose Counsel for the Collective's recovery of fees or expenses and does not object to the reasonableness of Plaintiff's fees and costs or that they were necessary for prosecution of this action. Mr. Richards has submitted a declaration and the full lodestars for all timekeepers in this case for Court review. *See* **Exhibit B**.

III. <u>**MEMORANDUM OF LAW**</u>

a. <u>**Motion for Court Approval of FLSA Collective Settlement Agreement**</u>

Unlike many other legal claims, parties may not bargain away the FLSA's protections. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 708 (1945) ("[T]he same policy which forbids employee waiver of the minimum statutory rate because of inequality of bargaining power prohibits these same employees from bargaining with their employer in determining whether so little damage was suffered that waiver of liquidated damages is called for"). There are only two ways in which FLSA claims can be settled or compromised by employees. *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. *Id.* at 1353. The only other route for compromise of FLSA claims is provided in the context of lawsuits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. *Id.*

The district court may dismiss an FLSA case after scrutinizing the settlement for fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353-55; *see also Pieczynski v. LCA Vision, Inc.,* 2022 WL 2163800 (M.D. Fla. May 19, 2022) (Irick, M.J.) (approving FLSA collective settlement). If a settlement in an FLSA dispute reflects a reasonable compromise over issues that are actually in dispute, such as FLSA coverage or computation of back wages, the District

5

Court is permitted to review and approve the settlement in order to promote the policy of encouraging settlement of litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353.

In determining whether a settlement agreement is fair and reasonable under the FLSA, the Court should consider the following factors:

> (1) The existence of collusion behind the settlement;
>
> (2) The complexity, expense, and likely duration of the litigation;
>
> (3) The state of the proceedings and the amount of discovery completed;
>
> (4) The probability of plaintiff's success on the merits;
>
> (5) The range of possible recovery; and
>
> (6) The opinions of counsel.

*See Pieczynski,* 2022 WL 2163800, at *2 (citing *Leverso v. SouthTrust Bank of Ala. Nat'l Assoc.,* 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

In addition to the foregoing factors, the Court must also consider the reasonableness of the attorney fees to be paid pursuant to the settlement agreement "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Id.* (citing *Silva v. Miller,* 307 F. App'x 349, 351-52 (11th Cir. 2009)). "The parties may demonstrate the reasonableness of the fees by either: (1) demonstrating the reasonableness of the proposed attorney fees using the lodestar method; or (2) representing that the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle plaintiff's FLSA claim." *Id.* (*citing Bonetti v. Embarq Mgmt. Co.,* 715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009)).

When scrutinizing the fairness of a settlement for a collective under the FLSA, final certification or decertification is not necessary in order to approve the settlement. *See, e.g.,*

*Huff v. Bobcat North America, LLC*, 2021 WL 268356, at *2 (M.D. Fla. 2021); *see also Campbell v. Pincher's Beach Bar Grill, Inc.*, 2017 WL 2700629, at *1-2 (M.D. Fla. 2017) (final certification of FLSA collective not necessary when approving settlement); *Pieczynski,* 2022 WL 2163800, at *3 (Your Honor finding that final certification is not necessary to approve and FLSA Collective settlement).

### b. All Relevant Factors Weigh in Favor of the Court Approving this FLSA Collective Settlement

The Parties respectfully submit that the resolution of the VRE Collective and NDB Collective's overtime wage claims is fair and reasonable, and that final certification of the collectives is not necessary at this stage of the proceedings. *Pieczynski,* 2022 WL 2163800, at *3. Without admitting any liability as to the alleged wage violations—which the Parties continue to dispute—Defendant agrees to pay members of the Settlement Collectives based on their membership within the respective collectives. *See* **Ex. A**. The VRE Collective will be paid a total of $55,000.00, which will be distributed on a pro-rata basis. Each member of the VRE Collective will receive a pro-rata distribution based on the total "overtime mileage" each member incurred on their personal vehicle in "overtime" hours in weeks in which they contend they worked over 40 hours. *Id.* To the extent any individuals had missing mileage data, their payment was determined according to the average overtime mileage and their "overtime" weeks. *Id.* The NDB Collective will be paid a total of $5,408.00, which will be distributed on a pro-rata basis. *Id.* Each member of the NDB Collective will receive a pro-rata distribution based on the total number of overtime hours each member contends they worked in weeks in which an allegedly non-discretionary bonus was paid. *Id.*

### i. There is No Evidence of Fraud or Collusion

There is no fraud or collusion behind this settlement. The Parties attended mediation on two separate occasions with respected wage and hour mediator, Dennis Clifford ("Mr. Clifford"). The Parties first attended mediation in October 2022 and, then, again in October 2023. With the assistance of Mr. Clifford, the Parties were able to engage in arms-length negotiations to reach a resolution of all claims in this case. The resolution was also aided by the exchange of additional documentation and data between counsel between the two mediations, to permit the Parties to better understand the foundations for each side's litigating position.

      **ii.** **In Light of the Complexity of these Claims, this Case Would Have Resulted in Protracted Litigation and Significant Expense to Both Sides if Resolution had Not Been Reached**

This was not a garden variety wage and hour dispute. Plaintiffs alleged complex wage and hour claims that would have required a significant number of depositions to be taken in the final months of discovery if this case had not settled. Defendant, in turn, would have served discovery on and deposed a significant number of the opt-in Plaintiffs. In total, hundreds of thousands of dollars would have likely been incurred litigating this case to competition.

      **iii.** **This Collective Settlement Was Reached Only After Discovery Was Taken and a Substantial Amount of Information was Shared Between the Parties**

This Collective Settlement was reached more than one year after the litigation was filed and after the Parties engaged in written discovery and exchanged hundreds of pages of documents/spreadsheets concerning the wages paid, mileage incurred, reimbursements issued, bonuses earned, and hours worked by the Settlement Collectives. With the benefit of

discovery, the Parties were able to construct damage models and engage in arms-length negotiations during which they were able to analyze the possible outcomes in this case.

    iv. **Each Collective Faced Uncertainty and their Likelihood of Prevailing at Trial Was Not a Foregone Conclusion**

Had this case not resolved, the Parties would have likely filed competing summary judgment motions. Among other arguments Defendant would have argued that a significant amount of the claimed "overtime" hours—and corresponding mileage—was, in fact, non-compensable home-to-work and work-to-home travel that, once properly accounted for, either wholly eliminated or dramatically reduced potential damages for each Plaintiff. Defendant also anticipated defending the adequacy of the mileage reimbursements it provided, and presenting a good-faith defense to Plaintiffs' request for liquidated damages. If Plaintiffs had ultimately proceeded to summary judgment or a trial, the Court or a jury could have determined that Plaintiffs were not entitled to any wages or liquidated damages whatsoever. To avoid the uncertainties inherent in litigation, the Parties negotiated a settlement through counsel that is satisfactory to all Parties. *See Davidson v. Golden Bay Towers, Inc.*, 2018 WL 7636333 at *1 (S.D. Fla. Dec. 17, 2018) (approving FLSA settlement agreement when the Parties were represented by counsel and there were contested issues of liability).

    v. **The Amounts Recovered for the Collectives Are Well Within the Range of Potential Recovery when Taking Certain Mitigating Circumstances into Consideration**

The VRE Collective's damage model was predicated upon vehicle reimbursements in weeks in which the VRE Collective claimed they worked more than 40 hours. Accordingly, the VRE Collective was limited in its ability to recover damages in those weeks in which they claimed they worked more than 40 hours and were required to operate their own personal

vehicles allegedly without full reimbursement for expenses incurred. The amount ultimately recovered for the VRE Collective is a substantial portion of the wages sought. And if Defendant's work-to-home travel argument were accepted, it would represent an amount significantly higher than what Defendant calculates as Plaintiffs' "best day."

The NDB Collective, meanwhile, was limited in its recovery based on the re-calculation of wages owed in weeks in which members claimed they worked over 40 hours and earned a non-discretionary bonus. The amount ultimately recovered for the NDB Collective is a substantial portion of the wages sought, and is reflective of the fact that the bonuses at issue had only a small impact on the relevant regular rate calculations.

### vi. Counsel for the Parties Believe this is a Fair, Reasonable, and Adequate Resolution of Claims for the Parties

The undersigned counsel, who have significant experience in wage and hour class and collective action litigation, view the reached-upon settlement as a fair and reasonable outcome for the Parties. The issues raised in this case were complex and would have required substantial litigation through summary judgment and trial, with litigation costs inevitably overwhelming the value of the individual claims. Moreover, the undersigned counsel voluntarily exchanged documents, and Plaintiffs believe they are being paid a substantial portion of the wages and liquidated damages they claim to be owed. This is a guaranteed recovery for the Settlement Collectives and brings finality and certainty to this dispute.

### c. Defendant Has Agreed to Pay Counsel for the Collectives' Reasonable Attorney's Fees and Costs Separately and Without Regard to the Amount Payable to the Collectives

The undersigned counsel certify that the attorney's fees and costs payable to Counsel for the Settlement Collectives were negotiated separately and without regard to the amount payable to each respective Collective. *Pieczynski,* 2022 WL 2163800 at *4 (*citing Bonetti,* 715

F.Supp.2d at 1228). Accordingly, the attorney's fees and costs are reasonable and do not create a conflict with the compensation payable to the Settlement Collectives under the Agreement.

## IV. CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Parties respectfully submit that the terms set forth with the FLSA Collective Settlement Agreement constitute a fair and reasonable resolution of their dispute concerning FLSA wages, and request that this Honorable Court approve the FLSA Collective Settlement Agreement, enter a dismissal of all claims with prejudice, and retain jurisdiction over enforcement of the Settlement Agreement for forty-five (45) days.

**Dated this 15th day of January 2024.**

Respectfully submitted,

| | |
|---|---|
| **USA EMPLOYMENT LAWYERS – JORDAN RICHARDS PLLC** | **SEYFARTH SHAW LLP** |
| 1800 SE 10th Ave. Suite 205 | 1075 Peachtree Street, N.E. |
| Fort Lauderdale, Florida 33316 | Suite 2500 |
| (954) 871-0050 | Atlanta, Georgia 30309-3958 |
| *Counsel for Plaintiffs* | (404) 885-1500 |
| | *Counsel for Defendant* |
| By: */s/ Jordan Richards* | By: */s/ Andrew McKinley* |
| JORDAN RICHARDS, ESQ. | ANDREW MCKINLEY, ESQ. |
| Florida Bar No. 108372 | Florida Bar No. 122069 |
| jordan@jordanrichardspllsc.com | amckinley@seyfarth.com |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was served by CM/ECF on all parties listed below on this 15th day of January 2024.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

**SERVICE LIST:**

ANDREW MCKLINEY, ESQ.
Fla. Bar No. 122069
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3958
Tel: (404) 885-1500
E-mail: amckinley@seyfarth.com
*Counsel for Defendant*