# Exhibit A

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| JAMES SERVIDORI, individually, and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) Case No.: 6:22-cv-1475-WWB-DCI<br>) |
| v. | ) Magistrate Judge:<br>) Honorable Daniel C. Irick |
| NOMI HEALTH, INC., | )<br>)<br>) |
| Defendant. | ) |

## FLSA COLLECTIVE SETTLEMENT AGREEMENT, RELEASE, AND WAIVER ("AGREEMENT")

This FLSA Collective Settlement Agreement, Release and Waiver ("Agreement") is made and entered into by and between JAMES SERVIDORI ("Representative Plaintiff"), on behalf of himself and the thirty-four (34) other individuals who timely consented to join the Vehicle Reimbursement Expense ("VRE") Collective in this Lawsuit, and on behalf of himself and the thirty-two (32) other individuals who timely consented to join the Non-Discretionary Bonus ("NDB") Collective in this Lawsuit, as described herein (VRE Collective and NDB Collective referred to as "Opt-in Plaintiffs") (Representative Plaintiff and Opt-in Plaintiffs collectively referred to hereinafter as "Plaintiffs" or "Settlement Collectives"), on the one side, and Defendant, NOMI HEALTH, INC. ("Defendant"), on the other ("Defendant" and "Plaintiffs" collectively referred to hereinafter as "the Parties"). The Parties agree as follows:

1. **RECITALS**

    1.1   On August 18, 2022, Representative Plaintiff, on behalf of himself and workers alleged to be similarly situated filed a Collective Action Complaint for Damages and Demand for Jury Trial in the United States District Court for the Middle District of Florida, Orlando Division. The lawsuit ("the Lawsuit") was assigned Case No. 6:22-cv-01475 and alleges unpaid federal overtime wages under 29 U.S.C. § 216(b) of the Fair Labor Standards Act

("FLSA"). The operative Complaint seeks recovery of unpaid overtime wages under the FLSA for two (2) collectives of similarly situated individuals. The two (2) collectives are the Reimbursement Expense Collective ("VRE") and the Non-Discretionary Bonus ("NDB") Collective (together, the "Settlement Collectives").

1.2 Defendant has denied and continues to deny any and all liability or wrongdoing of any sort with regard to all of the claims alleged in the Lawsuit and makes no concessions or admissions of liability of any sort. Defendant also denies that this case is appropriate for final collective certification. Moreover, Defendant denies it is subject to liability under the FLSA and otherwise disclaims any liability or wrongdoing whatsoever.

1.3 On April 10, 2023, the Court conditionally certified the VRE collective and the NDB collective. The VRE collective was comprised of "all Couriers employed by Defendant in the State of Florida during the previous 3-years who were required utilize their own personal vehicle and incur expenses in any week in which they worked more than 40 hours." The NDB collective was comprised of "all Couriers employed by Defendant in the State of Florida during the previous 3-years who worked more than 40 hours in a workweek and whose non-discretionary bonuses were not calculated into the overtime compensation paid."

1.4 The putative members of the Collectives were given a period of seventy-five (75) days to join the lawsuit.

1.5 Pursuant to the Court's order on Conditional Certification, Defendant provided the names of individuals who were potential putative members of the Collective. Counsel for the then-joined plaintiffs sent court-approved notices to these individuals. By the close of the 75-day opt-in period designated by the Court, thirty-five (35) individuals (including Servidori) had timely returned consents to join the VRE Collective. A total of thirty-three (33) individuals (including Servidori) had timely returned consents to join the NDB Collective. The VRE Settlement Collective therefore totals thirty-five (35) Plaintiffs (including the Representative Plaintiff) and the NDB Collective totals thirty-three (33) Plaintiffs (including the Representative Plaintiff). The names of these individuals are listed in **Exhibit A** to this Agreement.

1.6 After the filing of the Lawsuit, the Parties began to engage in substantial, and frank, conferrals about the claims and defenses at issue, including the merits of the claims, Defendant's defenses, and facilitation of court-authorized notice pursuant to 29 U.S.C.

§ 216(b), to help narrow the issues and identify putative members of the Collectives who were interested in joining this case. The parties also attended an early mediation in October 2022 with respected wage and hour mediator, Dennis Clifford ("Mr. Clifford"). The parties returned for a second mediation with Mr. Clifford nearly one year later in October 2023 after they engaged in discovery and facilitated court-authorized notice. Plaintiffs are represented by counsel experienced in complex FLSA collective and class action litigation. Defendant is likewise represented by counsel experienced in complex FLSA collective and class action litigation. The parties have conducted independent investigation of the facts and law during the course of this litigation.

1.7 The Parties have also analyzed and exchanged discovery, including payroll and time records, mileage charts, applicable law, other rulings, and respective damage models, calculations, and scenarios. Throughout the process the Parties have engaged in good faith arm's length settlement negotiations at all times.

1.8 Given the factual and legal disputes concerning all allegations, the proposed settlement provides a fair and reasonable compromise of a bona fide FLSA dispute; it affords collective-wide relief without prioritizing a single theory or particular subset of the Collectives. The amounts payable to each collective were separately negotiated.

1.9 In total, the Parties spent two full days in mediation with Mr. Clifford.

1.10 Through continued negotiations which spanned the course of a year, the Parties were eventually able to reach an agreement at the conclusion of the second mediation. Prior to and during the negotiations, Counsel for Collectives kept the Settlement Collectives timely informed of the status of negotiations. The Settlement further eliminates the inherent risks and expense both Parties would incur if this litigation were to continue through resolution on the merits. Although the Parties remain confident that they could succeed on the merits, there is no guarantee as to the outcome for either, and this settlement allows the Parties to avoid a complex and lengthy trial with an uncertain outcome. Finally, this Agreement constitutes the Parties' good-faith settlement of claims as to which there is a bona fide dispute regarding potential liability and damages based upon Plaintiffs' assertion of claims under the FLSA.

1.11 Without admitting or conceding any liability or responsibility for damages (each of which Defendants deny), Defendant has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement to avoid the burden, expense, inconvenience, and

uncertainty of continuing litigation.

1.12    Mr. Servidori has authority from each member of the respective Settlement Collectives to negotiate and resolve these claims.

1.13    The Parties agree that this is a fair and reasonable negotiated settlement of FLSA claims.

1.14    As part of their agreement, the Parties agreed to file a Joint Consent to Jurisdiction by a United States Magistrate Judge which has already occurred. The Parties jointly agree to allow Magistrate Judge Daniel C. Irick to have jurisdiction over final disposition of this case.

## 2. COMPROMISE ACKNOWLEDGEMENT

2.1    This settlement covers the Representative Plaintiff and all Opt-In Plaintiffs who joined the VRE and/or NDB collectives in the lawsuit. These Plaintiffs are current and former Couriers who claim that they worked over 40 hours in one or more workweeks for Defendant between April 10, 2023, and the filing of the motion for conditional certification, in the State of Florida.

2.2    This Agreement is entered into solely on the basis of a compromise of disputed claims and is not an admission by Defendant of any liability. Nor is it, nor will it be construed as an admission of any fact, including any violation of federal, state, local, or common law, statute, ordinance, directive, regulation, or order. Final approval of this settlement by the Court and the completion of all payments required hereunder shall result in the dismissal with prejudice of the claims of each member of the Settlement Collectives, against Defendant, in the above-captioned action.

2.3    Plaintiffs believe that the claims asserted have merit but recognize the expense and length of continued litigation through trial and possible appeals. Plaintiffs have also taken into account the uncertain outcome and the risk of any litigation, as well as the delays inherent in in such litigation and the likelihood of possible protracted appellate review. Plaintiffs believe that the settlement reached confers substantial benefits and that the settlement is fair, reasonable, adequate, in accordance with the law, and in the best interest of the Plaintiffs.

2.4    Defendant believes that the claims asserted by the Plaintiffs are without merit. Defendant has vigorously contested the claims but believes that further litigation would likely be protracted and expensive and the outcome would be uncertain. A substantial amount of

time, energy, and other resources have been spent, and absent settlement, will continue to be committed to the defense of the claims asserted in this litigation. Considering these realities, Defendant believes that settlement is the best way to resolve the dispute among the parties while minimizing further expenditures. Specifically, Defendant maintains that it properly paid the Plaintiffs under the FLSA. Defendant also disputes that the Settlement Collectives worked overtime, or that that the amount of overtime worked was insignificant and/or properly compensated. Defendant has concluded that further litigation of this Lawsuit would be protracted, distracting, and expensive, and that it is desirable that the Lawsuit be fully and finally settled and dismissed in the manner and upon the terms and conditions set forth in this Agreement.

  2.5 The settlement shall not be considered a concession or admission by Defendant of any violation of federal, state, or local law, statute, regulation, rule or order, or any obligation or duty at law or in equity, and it shall not be used or referred to in any proceedings other than to interpret or enforce this Agreement. Defendant's agreement to resolve the claims of all Plaintiffs will not be considered an admission or concession that final certification or collective action treatment would have been appropriate in this action for any purpose other than settlement, or that certification or collective action treatment would be appropriate in this or any other action.

  2.6 Nothing in this Agreement will be deemed a concession or admission by any party as to the amount of time or frequency workers worked and/or the amounts they were paid by Defendant.

  2.7 After consultation with their counsel, each Plaintiff has independently determined that the settlement represents a bona fide compromise of their claims.

  2.8 The Parties will seek judicial approval of their compromise and resolution of the dispute pursuant to the requirements of the FLSA, as set forth in this Agreement. The Parties will promptly file a Joint Motion for Court Approval of the Settlement Agreement as soon as practicable.

  2.9 The effective date of this agreement (the "Effective Date") will be the day after the Court enters a final order Order Granting the Joint Motion for Court Approval of Settlement Agreement and Agreed Order of Dismissal. The Parties will submit a Joint Motion of Settlement Agreement and Agreed Order of Dismissal within seven (7) calendar days of

the execution of this Settlement Agreement. Plaintiffs waive any right to appeal the Agreed Order of Dismissal, and any such appeal will be deemed a breach of this Agreement.

2.10   In the event the Court does not approve this Agreement, it will not have any effect, and the Parties will revert to their respective positions as of the date and time immediately prior to the execution of this Agreement as if no such agreement existed. In that event, the Parties will exercise their best efforts to address any concerns identified by the Court, while remaining consistent, to the maximum extent possible, with their original intent in entering into this Agreement.

2.11   The Parties agree that Exhibit A identifies the thirty-five (35) Plaintiffs in the VRE Settlement Collective who are eligible to participate in the settlement of those claims. The Parties further agree that Exhibit A also identifies the thirty-three (33) Plaintiffs in the NDB Settlement Collective who are eligible to participate in the settlement of those claims. Exhibit A also provides the amount each Plaintiff will receive ("Settlement Payments").

3. **CONSIDERATION**

3.1   For valuable consideration set forth in this Agreement, including the payment by Defendants to Plaintiffs specified in Exhibit A of this Agreement. This settlement includes the total gross amount of **Fifty-Five Thousand Dollars (**$55,000.00) for the VRE Settlement Collective ("VRE Settlement Amount"), half of which shall considered wages/backpay, and will be subject to payroll tax withholding and reported on a W-2, and the other half of which shall be considered payment for alleged liquidated damages, and will not be subject to payroll withholding and will be reported on a Form 1099. This settlement also includes the total amount of **Five-Thousand Four Hundred Eight Dollars** ($5,408.00) for the NDB Settlement Collective ("NDB Settlement Amount"), half of which shall considered wages/backpay, and will be subject to payroll tax withholding and reported on a W-2, and the other half of which shall be considered payment for alleged liquidated damages, and will not be subject to payroll withholding and will be reported on a Form 1099, to the extent any individual's settlement amount meets the threshold for such reporting. Plaintiffs explicitly understand that taxes and withholdings shall be made by Defendant from the foregoing W-2 amounts, which may result in a smaller net recovery for that portion of the settlement proceeds due to each of the Plaintiffs. The foregoing amounts are inclusive of employer payroll taxes. Plaintiffs, individually and collectively, agree to fulfill their covenants and obligations set forth in this

Agreement, including those specified in Paragraph Nos. 6.1, and 7.1 of this Agreement to the Settlement Collectives listed on Exhibit A and to Plaintiffs' attorneys as reflected below in Paragraph 3.6.

       3.2     The VRE Settlement Amount will be used to make settlement payments to the VRE Settlement Collective in accordance with the payment schedule and distribution set forth in Exhibit A. The NDB Settlement Amount will be used to make settlement payments to the NDB Settlement Collective in accordance with the payment schedule and distribution set forth in Exhibit A.

       3.3     In exchange for the full and final release of claims as set forth herein, and subject to more specific terms and conditions as described below, Defendant has agreed to make the payments specified in Exhibit A at the designated times as set forth below, provided that all payments are conditioned upon (a) a Court Order approving this Agreement; (b) execution of this Agreement by the Representative Plaintiff; and (c) receipt of executed Form W-9s from all Plaintiffs and from Plaintiffs' counsel.

       3.4     Counsel for the Settlement Collectives represents that determination of the amounts payable to each Plaintiff have been based off of the equitable pro-rata distribution and: (a) proportionate amount of alleged overtime damages, measured according to miles driven by each of the VRE Plaintiffs during the applicable limitations period; and (b) proportionate number of alleged overtime weeks worked by the NDB Plaintiffs covered by a relevant bonus payment during the applicable limitations period. To the extent mileage data was not available for any individual, an estimated average mileage figure was used.

       3.5     Plaintiffs submit that these payments will fairly compensate the Settlement Collectives for the claims set forth in the operative Complaint. Defendant submits that these Settlement Payments fairly approximate the cost and inconvenience to Defendant if this litigation were to continue and avoiding both is the sole reason for agreeing to settle these allegations now. The Settlement Payments will be allocated as follows: (a) half of each Settlement Payment will be classified as back-pay wages subject to withholding; (b) half of each Settlement Payment will be classified as liquidated damages and corresponding IRS Form 1099's will be issued for such payments.

       3.6     The Parties further negotiated fair and reasonable attorney's fees and costs separately and without regard to the amounts payable to the Settlement Collectives. Counsel

for the Plaintiffs will be paid Seventy Thousand Dollars ($70,000.00) for attorney's fees and costs. The Parties acknowledge that fees and costs to Counsel for the Settlement Collectives were negotiated separately from the amounts to be paid to Plaintiffs. Counsel for the Settlement Collectives and the Plaintiffs agree that the attorney's fees and expenses are a fair and reasonable amount and were necessary for the prosecution of this action. For purposes of this Agreement only, Defendant does not oppose Counsel for the Settlement Collectives' recovery of these fees or expenses and does not object to the reasonableness of Plaintiffs' fees and expenses, or that they were fair, reasonable, and necessary for the prosecution of this action. Furthermore, in an effort to help bring this matter to a conclusion, Counsel for the Plaintiffs has agreed to accept a reduced amount of the actual amount of attorney's fees and costs incurred in this litigation, and will continue to incur additional attorney's fees and costs in finalizing and delivering settlement payments to the Settlement Collectives without further reimbursement. Accordingly, the Maximum Gross Settlement Amount is One Hundred Thirty Thousand Four Hundred and Eight Dollars ($130,408). The Maximum Gross Settlement Amount represents the maximum amount that Defendant will pay pursuant to this Agreement, regardless of distribution, inclusive of all Settlement Payments, Counsel Fees and Costs, and Employer Payroll Taxes.

    **4. SETTLEMENT DISTRIBUTION**

    4.1    Within five (5) business days of the execution of this Agreement, the Defendant shall provide Counsel for the Collective with a list of the Plaintiffs for whom Defendant requires an updated IRS Form W-4. Counsel for the Collective shall provide these updated Form W-4's no later than ten (10) calendar days following receipt of the list. At the same time, counsel for the Collectives shall also provide Form W-9s for all Plaintiffs.

    4.2    Within thirty (30) calendar days of the Effective Date, Defendant shall provide the payments issued to each Plaintiff for the Plaintiffs' alleged unpaid wage portions and alleged liquidated damage portions of the Settlement Payments set forth in Exhibit A. Within thirty (30) calendar days of the Effective Date, Defendant shall deliver payment for attorney's fees and costs to Jordan Richards PLLC via one check. All of the Settlement Payments shall be sent to Counsel for the Collectives at the following address: USA Employment Lawyers, Attn: Jordan Richards, Esq., 1800 SE 10th Ave. Suite 205 Fort Lauderdale, Florida 33316.

    4.3    Within seven (7) calendar days after Counsel for the Settlement Collectives

receives the checks from Defendant, the Counsel for the Settlement Collectives will distribute checks to the Plaintiffs, representing: (1) backpay due as described above less applicable withholding taxes and deductions; and (2) the amount of liquidated damages due under the Agreement as described above. Counsel for the Settlement Collectives shall have full responsibility for distribution of the checks. However, in the event that third-party vendors unsuccessfully deliver the checks to Plaintiffs the Counsel for the Settlement Collectives will notify Defendant through their counsel and request that a stop payment be placed, and replacement checks be issued immediately.

4.4 In the event any Plaintiff does not cash the settlement check(s) distributed within 90 days ("Cashing Period"), any remaining uncashed checks shall be cancelled, and the funds promptly returned to Defendant. Requests for re-issues can be made, if necessary, during the Cashing Period. However, requests for re-issues made after the Cashing Period expires will not be processed.

5. **TAXES**

5.1 It is each Plaintiff's ultimate obligation to pay his or her employee's share of appropriate federal, state, and local income taxes on all payments that lawfully qualify as income. The Parties also agree that there must be proper withholding of federal, state, and local income taxes, and the employees' share of FICA and Medicare on all settlement payments representing back-pay wages, and that taxes and withholdings shall be made by Defendant from any amounts representing back-pay wages.

5.2 Defendant shall be responsible for calculating and paying any employer's portion of applicable FUTA, SUTA, and the employer's shares of FICA and Medicare on all payments representing back-pay wages and will remit those payments to the appropriate taxing authorities.

6. **LIMITED RELEASE**

6.1 Upon Court Approval of this Agreement and entry of the Order of Dismissal and payment of all monetary amounts due under this Agreement, the Settlement Collectives shall, individually and collectively, for themselves, their heirs, personal representatives, administrators, and assigns, anyone claiming by or through them, forever fully and irrevocably release Defendant, including Defendant's past and present owners, directors, shareholders, officers, partners, affiliates, parents, subsidiaries, insurers, assignees, divisions,

agents, employees, attorneys, benefit plans, joint venturers, partners, contractors, fiduciaries, predecessors, and successors in interest (and any past and present owners, directors, shareholders, officers, agents, and employees of the foregoing entities) (collectively, all of the foregoing individuals and entities are referred to as the "Releasees") from any and all claims, suits, actions, controversies, demands, and/or causes of action, premised upon statute, contract, common law, or otherwise, whether seeking liquidated or actual damages, penalties, specific performance, injunctive relief, indemnity, contribution, attorneys' fees, costs, interest, or any other relief, that arise out of, relate to, or are connected with the alleged violation of or non-compliance with the Fair Labor Standards Act ("FLSA"), Florida Minimum Wage Act ("FMWA"), and/or other laws relating to or concerning the payment of wages.

      6.2    Plaintiffs agree never to sue any Releasee for any reason covered by the above Release. Despite this promise not to sue, Plaintiffs may file suit to enforce this Agreement, as otherwise outlined in this Agreement. If any of the Plaintiffs sues a Releasee in violation of this Agreement, that individual shall be required to pay the Releasee's reasonable attorneys' fees and other litigation costs incurred in defending against the suit.

## 7. **DISMISSAL OF ACTION**

      7.1    Within seven (7) days of receipt by Plaintiffs' counsel of all settlement amounts under this Agreement, including the for alleged back wages, liquidated damages, and attorneys' fees and costs, the Plaintiffs agree to the dismissal of the Lawsuit with prejudice, and to cooperate and take all steps necessary and appropriate to achieve final dismissal of the Lawsuit with prejudice.

## 8. **AUTHORITY OF THE PARTIES**

      8.1    The signatories hereby represent that they are fully authorized to enter into this Agreement. In particular, Counsel for the Settlement Collectives represents that the Representative Plaintiff and the Settlement Collectives have authorized them to enter this Agreement and to bind all of them to the terms and conditions set forth herein.

      8.2    The Parties acknowledge that throughout the settlement negotiations that resulted in this Agreement, they have been represented by counsel who are experienced in collective action litigation under the FLSA, and that this Agreement is made with the consent and advice of counsel who have prepared the Agreement.

## 9. **MUTUAL FULL COOPERATION**

9.1 The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

10. **ENFORCEMENT ACTIONS**

10.1 In the event that one or more of the Parties to this Agreement institutes any legal action, arbitration, or other proceeding against any other party or Parties to enforce the provisions of this Agreement, or otherwise presents arguments in a legal action, arbitration, or other proceeding requesting the enforcement of the provisions of this Agreement, the prevailing party or Parties on the issue shall be entitled to recover from the non-prevailing party or Parties reasonable attorney's fees and costs, including any expert witness fees if reasonable.

10.2 In the event that Defendant fails to comply with any of their payment obligations under this Agreement, Counsel for the Settlement Collectives shall be entitled to immediately move for a consent judgment upon establishing a violation of Defendant's obligation, and seek recovery of any amounts owed under the Agreement less any amount paid to date.

11. **MODIFICATION**

11.1 Unless otherwise stated herein, this Agreement and its attachments may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

12. **ENTIRE AGREEMENT**

12.1 This Agreement and its attachments constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary, or contradict the terms of this Agreement. In the event of any conflict between this Agreement and any other settlement-related document, the Parties intend that this Agreement shall be controlling.

13. **COUNTERPARTS**

13.1 This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. In making proof of this Agreement, it shall not be necessary to produce or account for more

than one such counterpart.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Settlement Agreement on the dates indicated below:

**FOR THE PLAINTIFFS:**

_____
James Servidori (Jan 11, 2024 03:55 EST)

James Servidori

Date: 11/01/2024 _____ 2024

**FOR THE DEFENDANT:**

_Debbie Giambruno_

Nomi Health, Inc.

By: Debbie Giambruno _____

Title: General Counsel _____

Date: 1/12/2024 _____ 2024

12

**Exhibit A - VRE Settlement Collective Chart**

| Name | Allegedly Unpaid Wages (W-2) | Liquidated Damages (1099) |
|---|---|---|
| James Servidori | $4,754.52 | $4,754.52 |
| Christine Byron | $2,052.24 | $2,052.24 |
| Ruth Rowe | $152.43 | $152.43 |
| Dennis Witzke | $423.03 | $423.03 |
| Christopher Hicks | $6,621.17 | $6,621.17 |
| Latrinna Shaw | $1,937.14 | $1,937.14 |
| Ricardo Perez | $36.44 | $36.44 |
| Robert Williams | $644.42 | $644.42 |
| Felix Chavarria | $436.05 | $436.05 |
| Sandy Gassant | $581.03 | $581.03 |
| Fifinia Mene | $67.14 | $67.14 |
| Christopher Camarena | $330.86 | $330.86 |
| Lakisha Daniels | $716.97 | $716.97 |
| Emily Alexander | $920.27 | $920.27 |
| Teeshan Robinson | $59.36 | $59.36 |
| Kelvin Williams | $660.24 | $660.24 |
| Italo Pignano | $1,379.18 | $1,379.18 |
| Lisandro Meza | $10.00 | $10.00 |
| Jacqueline Rodriguez | $144.19 | $144.19 |
| Johnnatan Rodriguez | $1,634.88 | 1,634.88 |
| Sammy Guerrier | $11.10 | $11.10 |
| Kristina Douglas | $87.56 | $87.56 |
| Stephanie Chatelain | $76.66 | $76.66 |
| Earl Price | $20.14 | $20.14 |
| Jeffrey McDonald | $188.12 | $188.12 |
| Gloria Blandon | $220.34 | $220.34 |
| Geresse Gonzalez | $345.62 | $345.62 |
| Yara Perez Zeledon | $771.74 | $771.74 |
| Alejandra Palma | $157.99 | $157.99 |
| Jacques Michel | $419.65 | $419.65 |
| Robert Kaige | $696.79 | $696.79 |
| Yenia Gonzalez | $59.81 | $59.81 |
| Devain Lathan | $684.78 | $684.78 |
| Samenta Joseph | $130.56 | $130.56 |
| Tiffany Henderson | $67.58 | $67.58 |
| **TOTAL:** | $27,500.00 | $27,500.00 |

# NDB Settlement Collective Chart

| Name | Unpaid Wages (W-2) | Liquidated Damages (1099) |
|---|---|---|
| James Servidori | $174.16 | $174.16 |
| Christine Byron | $54.95 | $54.95 |
| Ruth Rowe | $0.00 | $0.00 |
| Dennis Witzke | $10.55 | $10.55 |
| Christopher Hicks | $107.39 | $107.39 |
| Latrinna Shaw | $62.52 | $62.52 |
| Ricardo Perez | $130.50 | $130.50 |
| Robert Williams | $108.29 | $108.29 |
| Felix Chavarria | $38.96 | $38.96 |
| Fifinia Mene | $211.18 | $211.18 |
| Christopher Camarena | $24.25 | $24.25 |
| Lakisha Daniels | $86.38 | $86.38 |
| Emily Alexander | $134.19 | $134.19 |
| Teeshan Robinson | $63.73 | $63.73 |
| Kelvin Williams | $58.76 | $58.76 |
| Italo Pignano | $122.42 | $122.42 |
| Lisandro Meza | $148.12 | $148.12 |
| Jacqueline Rodriguez | $92.19 | $92.19 |
| Johnnatan Rodriguez | $222.02 | $222.02 |
| Sammy Guerrier | $0.00 | $0.00 |
| Kristina Douglas | $9.99 | $9.99 |
| Stephanie Chatelain | $90.38 | $90.38 |
| Earl Price | $10.00 | $10.00 |
| Jeffrey McDonald | $39.15 | $39.15 |
| Gloria Blandon | $109.79 | $109.79 |
| Geresse Gonzalez | $8.63 | $8.63 |
| Yara Perez Zeledon | $7.20 | $7.20 |
| Alejandra Palma | $197.19 | $197.19 |
| Robert Kaige | $24.34 | $24.34 |
| Yenia Gonzalez | $170.23 | $170.23 |
| Devain Lathan | $87.43 | $87.43 |
| Samenta Joseph | $76.90 | $76.90 |
| Tiffany Henderson | $22.21 | $22.21 |
| **TOTAL:** | $2,704.00 | $2,704.00 |

# Settlement Agreement and Release (Collective - Servidori) (Final)

## Final Audit Report 2024-01-11

| | |
|---|---|
| Created: | 2024-01-10 |
| By: | USA Employment Lawyers (jordan@jordanrichardspllc.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAUTyEFkDOPZmWMrYTr-s-ipH-1nfZ1Crh |

## "Settlement Agreement and Release (Collective - Servidori) (Final)" History

Document created by USA Employment Lawyers (jordan@jordanrichardspllc.com)
2024-01-10 - 10:49:56 PM GMT- IP address: 76.153.146.234

 Document emailed to James Servidori (2goodtobenew@gmail.com) for signature
2024-01-10 - 10:50:02 PM GMT

Email viewed by James Servidori (2goodtobenew@gmail.com)
2024-01-11 - 6:38:53 AM GMT- IP address: 66.249.88.2

Document e-signed by James Servidori (2goodtobenew@gmail.com)
Signature Date: 2024-01-11 - 8:55:08 AM GMT - Time Source: server- IP address: 68.205.248.237

Agreement completed.
2024-01-11 - 8:55:08 AM GMT

Adobe Acrobat Sign