UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JAMES SERVIDORI,**

        **Plaintiff,**

**v.**        **Case No: 6:22-cv-1475-DCI**

**NOMI HEALTH, INC.,**

        **Defendant.**

## ORDER

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Joint Motion for Court Approval of FLSA Collective Settlement Agreement and Request for Order of Dismissal with Prejudice (Doc. 89)** |
| **FILED:** | **January 15, 2024** |
| **THEREON** it is **ORDERED** that the motion is **GRANTED in part**. | |

### I.     Background and Procedural History

On August 18, 2022, James Servidori (Plaintiff Servidori) filed a Complaint against Nomi Health, Inc. (Defendant) alleging causes of action for unpaid overtime wages pursuant to the Fair Labor Standards Act (FLSA) on behalf of himself and similarly situated "Couriers employed by Defendant in the State of Florida during the previous 3-years who were required to utilize their own personal vehicle and incur expenses in any week in which they worked more than 40 hours." Doc. 1. Plaintiff Servidori alleges that during employment, Defendant required Plaintiff Servidori and other similarly situated individuals to possess and utilize their own personal vehicles for

Defendant's benefit and to incur significant cost and expense to perform duties. *Id*. at 3. Plaintiff Servidori contends that Defendant required these employees to incur the expense for gasoline, automobile insurance, mileage, and tolls, and Defendant "failed to fully reimburse them for these expenses in weeks where Plaintiff and other similarly situated Couriers worked in excess of 40 hours per week." *Id*. at 3-4.

Further, Plaintiff Servidori claims that Defendant enforced a company-wide incentive program, which provided non-discretionary bonuses. *Id*. Plaintiff Servidori alleges that the non-discretionary bonuses were a minimum of $250.00 per month, which were automatically paid if a pre-determined volume was achieved and an additional $250.00 per month automatically paid if a pre-determined turn-around-time target was achieved. *Id*. at 5. Plaintiff Servidori asserts that pursuant to 29 C.F.R. § 778.211, Defendant was required to, but did not, include the bonuses in the calculation of the regular rate of pay when determining the applicable overtime payments. *Id*. In sum, the Complaint includes two counts for relief for federal overtime wage violations pursuant to 29 U.S.C. § 216(b). *Id*. at 8-11. Since the filing of the Complaint, Plaintiff Servidori filed 35 Notices of Consent to join. Docs. 11-14, 35, 46, 56, 54, 56-61, 62-81, 88.

The parties continued to litigate the case and eventually Plaintiff Servidori filed an Unopposed Motion for Conditional Certification Pursuant to 29 U.S.C. § 216(b). Doc. 34. The Court granted in part the motion to the extent the request for conditional certification was granted and the Proposed Notice was deemed adequate with certain modifications. Doc. 51.

The parties subsequently filed a Notice of Settlement, and the Court directed the parties to file a joint motion for final approval. Docs. 83, 88. Pending before the Court is Plaintiff Servidori, the Opt-in Plaintiffs (collectively "Plaintiffs"), and Defendant's Joint Motion for Court Approval of FLSA Collective Settlement Agreement and Request for Order of Dismissal with Prejudice.

Doc. 89 (the Motion). With the Motion, the parties include a copy of the "FLSA Collective Settlement Agreement, Release, and Waiver" (Doc. 89-1) (the Settlement Agreement) and the declaration of Jordan Richards, Esq. (Doc. 89-2) (the First Richards Declaration).

Upon the initial review of the Motion, the Court had concerns because Plaintiff Servidori and Defendant are the only signatories to the Settlement Agreement, and the terms do not explicitly reflect that the Opt-in Plaintiffs are given the ability to object to the Settlement entered on their behalf. Doc. 90. Specifically, the parties do not state whether notice and a period of objection occurred or if it is their position that it was unnecessary. *Id*. Accordingly, the Court directed the parties to file a joint supplement on the issue. Doc. 90. The parties have filed a Joint Supplement in response to the Order and Plaintiff Servidori has filed a Supplemental Declaration. Docs. 91, 92. As such, the Motion is ripe for review.

## II. Applicable Law

In *Lynn's Food*, the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness." 679 F.2d at 1353. A court may only enter an order approving a settlement if it finds that the settlement "is a fair and reasonable resolution of a bona fide dispute," of the plaintiff's FLSA claims. *Id.* at 1353-55. In doing so, the Court should consider the following nonexclusive factors:

- The existence of collusion behind the settlement.
- The complexity, expense, and likely duration of the litigation.
- The state of the proceedings and the amount of discovery completed.
- The probability of plaintiff's success on the merits.
- The range of possible recovery.

• The opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). The Court may approve the settlement if it reflects a reasonable compromise of the FLSA claims that are actually in dispute. *See Lynn's Food*, 679 F.2d at 1354. There is a strong presumption in favor of settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

When a settlement agreement includes an amount for attorney's fees and costs, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam). The parties may demonstrate the reasonableness of the attorney fees by either: (1) demonstrating the reasonableness of the proposed attorney fees using the lodestar method; or (2) representing that the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle the plaintiff's FLSA claim. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

### III. Analysis

#### A. Certification

The parties seek approval of the Settlement Agreement without a request concerning final certification. Specifically, the parties state that "[w]hen scrutinizing the fairness of a settlement for a collective under the FLSA, final certification or decertification is not necessary in order to approve the settlement." Doc. 89 at 6. The Court agrees with this contention as there is persuasive authority standing for the proposition that courts may approve settlement at the conditional certification stage without requiring final certification. *See, e.g.*, *Ortiz v. Metters Indus., Inc.*, 6:17-cv-1879-PGB-DCI, Doc. 133, *report and recommendation adopted* at Doc. 133 (M.D. Fla. August

16, 2019) (citing to *Harris v. Performance Transportation LLC*, case no. 8:14-cv-02913-SDM-AAS (M.D. Fla. Oct. 27, 2016); *Campbell v. Pincher's Beach Bar Grill Inc.*, 2017 WL 2700629, at *1-2 (M.D. Fla. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 3668889 (deeming consideration of final certification unnecessary).

Based on the foregoing authority, the Court finds that the request for approval of settlement may proceed while the case is in the conditional certification stage.

### B. The Settlement

Plaintiffs claim that Defendant violated the FLSA by failing to fully reimburse Couriers for the vehicle-related expenses they incurred in weeks where they worked over 40 hours which allegedly triggered overtime violations. Doc. 1. Plaintiffs also claim that Defendant failed to pay the proper overtime when the Couriers worked over 40 hours in weeks where they also received non-discretionary bonus payments. *Id*. Defendant continues to dispute liability, but the parties have reached a compromise. *See* Doc. 89-1 at 5-6.[1]

Specifically, Defendant has agreed to create a settlement fund for each Settlement Collective.[2] Defendant will issue payment of $55,000.00 to the VRE Settlement Collective and

---

[1] The parties include within the Settlement Agreement a provision entitled "Compromise Acknowledgement" wherein the parties state that "[t]his Agreement is entered into solely on the basis of a compromise of disputed claims and is not an admission by Defendant of any liability." Doc. 89-1 at 5.

[2] At the time of the conditional certification, Plaintiff Servidori moved to conditionally certify the following two "collectives of similarly situated Couriers":

> VRE Collective: All Couriers employed by Defendant in the State of Florida during the previous 3-years who were required to utilize their own person vehicle and incur expenses in any week in which they worked more than 40 hours.

> Non-Discretionary Bonus Collective: All Couriers employed by Defendant in the State of Florida during the previous 3-years who worked more than 40 hours in a workweek and whose non-discretionary bonuses were not calculated into the

$5,408.00 to the NDB Settlement Collective. Doc. 89. The VRE Collective's payment will be distributed on a pro-rata basis and each member will receive the distribution based on the total overtime mileage each member incurred. The NDB Collective will receive a pro rata distribution based on the total number of overtime hours each member contends they worked in the weeks where a non-discretionary bonus was paid. Doc. 89-1 at 7-8. The parties have also reached an agreement on the timeline for the distribution, taxes, release, the dismissal of the action, enforcement actions, and modification to the Settlement Agreement. *Id*. at 1-12.

The Court finds that this settlement to be a fair and reasonable compromise. First, there is no evidence of collusion. As the parties explain, they attended mediation on two occasions and were eventually able to engage in arms-length negotiations to reach settlement. Doc. 89 at 8. The resolution also resulted in the exchange of additional documentation and Plaintiff Servidori and Defendant were represented by counsel. *Id*.

Second, the Court agrees with the parties that the case had a relatively high level of complexity based on the nature of the wage hours claims. As such, the matter could have led to a significant amount of expensive discovery. As it was, settlement was only reached after the parties engaged in discovery for more than a year after the commencement of the litigation. *See* Doc. 42.

Third, the parties agree that both Collectives were faced with uncertainty as the parties would likely file dual motions for summary judgment. Defendant's position would claim that a significant amount of hours claimed along with mileage was non-compensable resulting in the reduction or elimination of damage recovery. Doc. 89 at 9. Defendant also states that it would have defended the adequacy of the mileage reimbursement and presented a good faith defense on

---

overtime compensation paid.

*See* Doc. 44 at 3.

- 6 -

the claim for liquidated damages. *Id*. To avoid the uncertainty of litigation, the parties advise the Court that they negotiated a settlement. *Id*.

Fourth, the parties assert that the amount at issue is within the range of potential recovery given the mitigating circumstances. *Id*. Namely, the VRE Collective is limited on recovery to the weeks worked over 40 hours in personal vehicles without full reimbursement. *Id*. at 9-10. Also, the NDB Collective is limited to a recalculation of wages owed during weeks worked over 40 hours where individuals earned a non-discretionary bonus. *Id*. at 10.

Finally, the parties claim that counsel for the parties believe this is a fair, reasonable, and adequate resolution of a bona fide dispute. *Id*. Counsel states that they have significant experience in collective action litigation and view the settlement as fair. *Id*. According to the First Richards Declaration, Plaintiff Servidori's counsel works for a firm that predominately handles class and collective actions involving wage claims. Doc. 89-2 at 4. Also, counsel has significant personal experience litigating wage and hour matters in the collection action realm. *Id*. As such, Plaintiffs were adequately represented.

Based on the foregoing, the Court finds that the settlement is a fair resolution of a bona fide dispute.

### C. Attorney Fees and Costs

The parties state that attorney fees and costs payable to "Counsel for the Settlement Collectives were negotiated separately and without regard to the amount payable to each representative Collective." Doc. 89 at 10. The Settlement Agreement includes the following:

> The Parties further negotiated fair and reasonable attorney's fees and costs separately and without regard to the amounts payable to the Settlement Collectives. Counsel for the Plaintiffs will be paid Seventy Thousand Dollars ($70,000.00) for attorney's fees and costs. The Parties acknowledge that fees and costs to Counsel for the Settlement Collectives were negotiated separately from the amounts to be paid to Plaintiffs. Counsel for the Settlement Collectives and the Plaintiffs agree

> that the attorney's fees and expenses are a fair and reasonable amount and were necessary for the prosecution of this action. For purposes of this Agreement only, Defendant does not oppose Counsel for the Settlement Collectives' recovery of these fees or expenses and does not object to the reasonableness of Plaintiffs' fees and expenses, or that they were fair, reasonable, and necessary for the prosecution of this action. Furthermore, in an effort to help bring this matter to a conclusion, Counsel for the Plaintiffs has agreed to accept a reduced amount of the actual amount of attorney's fees and costs incurred in this litigation, and will continue to incur additional attorney's fees and costs in finalizing and delivering settlement payments to the Settlement Collectives without further reimbursement. Accordingly, the Maximum Gross Settlement Amount is One Hundred Thirty Thousand Four Hundred and Eight Dollars ($130,408). The Maximum Gross Settlement Amount represents the maximum amount that Defendant will pay pursuant to this Agreement, regardless of distribution, inclusive of all Settlement Payments, Counsel Fees and Costs, and Employer Payroll Taxes.

Doc. 89-1 at 8-9.

Upon due consideration, the undersigned finds that parties have adequately established the reasonableness of the fees under *Bonetti* and the costs. Overall, the agreement concerning fees and costs does not affect the fairness and reasonableness of the settlement.

### D. Limited Release

The Settlement Agreement includes a release, but it is limited to the wage-related claims. Doc. 89-1 at 10-11. Courts in this District have found releases similar to the one presented here to pass judicial scrutiny where a plaintiff is not required to release unknown claims that are not related to the FLSA or wage claims. *See Pond v. Red Lambda, Inc.*, 2020 WL 4808744, at *4 (M.D. Fla. Aug. 3, 2020), *report and recommendation adopted by*, 2020 WL 4785449 (M.D. Fla. Aug. 18, 2020) (recommending approval of release of "unpaid wage and hou[r] and/or related claims arising solely out of the same facts or circumstances related to those in the above-captioned action."); *Batchelor v. Gen. Mar. Corp.*, 2016 WL 4467136, at *1 (M.D. Fla. Aug. 24, 2016) (approving release where it was "limited to wage claims."); *Monahan v. Rehoboth Hosp., Inc.*, 2015 WL 9258244, at *2 (M.D. Fla. Dec. 18, 2015) ("The undersigned sides with those

decisions holding that a release in an FLSA settlement is generally reasonable so long as it is narrowly-tailored to the wage claims asserted in the complaint.").

Since the "Limited Release" provision only applies to Plaintiffs' FLSA and wage claims against Defendant,[3] the Court finds that the "Limited Release" does not compromise the fairness of the settlement.

### E. Retention of Jurisdiction

In the Motion, the parties request that the Court retain jurisdiction over the enforcement of the Settlement Agreement for 45 days.  Doc. 89 at 11.  That term is not in the Settlement Agreement and the parties provide no authority or analysis to support the request.  As such, is it is due to be denied.  *See* Local Rule 3.01(a).  Further, courts in this District routinely deny requests to retain jurisdiction to enforce the terms of an FLSA settlement.  *See, e.g., Correa v. Goldblatt*, 2011 WL 4596224, at *3 (M.D. Fla. Sept. 9, 2011) (denying request to retain jurisdiction to enforce terms of FLSA settlement agreement due to the absence of any compelling reason to retain jurisdiction), *report and recommendation adopted by*, 2011 WL 4704196 (M.D. Fla. Oct. 4, 2011); *Smither v. Dolphin Pools of SW Fla., Inc.*, 2011 WL 2565494, at *2 (M.D. Fla. June 9, 2011)*, report and recommendation adopted by*, 2011 WL 2580459 (M.D. Fla. June 29, 2011) (denying request to retain jurisdiction to enforce terms of FLSA settlement agreement due to parties' failure to present arguments or reasons in support of retaining jurisdiction).

In sum, the parties have stated no basis for retention and the Court rejects the parties' invitation to retain jurisdiction to enforce the agreement even for 45 days.

---

[3] The release apples to claims that "arise out of, relate to, or are connected with the alleged violation of or non-compliance with the Fair Labor Standards Act ("FLSA"), Florida Minimum Wage Act [ ], and/or other laws relating to or concerning the payment of wages."  Doc. 89-1 at 11.

### F. Notice of Settlement and Opportunity to Object

In the Motion, the parties did not address a notice and objection period for the Opt-in Plaintiffs. *See* Doc. 89. "The ability to object is significant because 'the majority of the courts approve a settlement only after notice has been provided to the opt-in plaintiffs and a fairness hearing conducted, or at the least, what is required is a statement to the court that the opt-in plaintiffs have had notice of the settlement and an opportunity to object.'" *Pieczynski v. LCA Vision, Inc.*, 2022 WL 2163800, at *6 (M.D. Fla. May 19, 2022), *report and recommendation adopted by*, 2022 WL 2163802 (M.D. Fla. May 23, 2022) (quoting *Goldsby v. Renosol Seatings, LLC*, 2013 WL 6535253, at *10 (S.D. Ala. Dec. 13, 2013)).

As such, the Court directed the parties to submit supplemental briefing on the issue with citation to authority to address whether the Court should require Plaintiff Servidori and Defendant to either provide (1) a notice of settlement to the Opt-in Plaintiffs with opportunity to object before the Court conducts a fairness hearing; or (2) a clearer statement to the Court confirming that the Opt-in Plaintiffs have been provided with notice of the settlement and its terms and an adequate opportunity to object. Doc. 90.

On March 25, 2024, the parties filed a Joint Supplement in Response to the Order supported by another declaration from Plaintiffs' counsel (the Second Richards Declaration) and 32 Notices of Acceptance of Settlement and Waiver (the Notices of Acceptance). Docs. 91, 91-1. The parties represent that counsel has taken measures to provide the notice and opportunity to object. Doc. 91 at 5.[4] Indeed, according to the Second Richards Declaration, counsel's law firm provided all

---

[4] While the parties have taken these measures, it is their position that an opportunity to object is unnecessary because the Opt-in Plaintiffs assigned over the right to negotiate to Plaintiff Servidori and none of the members revoked consent prior to the date of settlement. Doc. 91 at 4. The parties contend that the case is procedurally distinguishable from cases where courts have denied motions to approve for failure to provide notice and opportunity to object to settlement. *Id*. at 3, citing

members of the Collectives with notice of the settlement, disclosed the scope of the release, and provided an opportunity to accept or object to the amounts they will be receive. Doc. 91-1.

Specifically, counsel declares that the law firm contacted "every single member of the collectives in this case and notified them of: (a) the settlement in this case; (b) the specific amount of money they will receive; and (c) the scope of release in the settlement. Each member of the collective was sent an e-mail and a follow-up document[.]" *Id*. at 2. Counsel states that each member was given an opportunity to object to settlement and the Notices of Acceptance explain that by accepting the amounts in the settlement, the member will be waiving their claims and signature indicates that there is no objection. *Id*.

Initially, counsel received 32 of the 35 members' signed Notices of Acceptance that include waivers to the objection to settlement. Doc. 91-1. Counsel declares that the "law firm has spoken

---

*Lochren v. Horne*, 2023 WL 5934466, at *6 (M.D. Fla. Sept. 19, 2023). Namely, Plaintiffs contend that in *Lochren*, the court denied the motion for approval because the parties reached settlement prior to the conditional certification and prior to notice to potential members. *Id*. Here, since the parties reached settlement only after conditional certification and the Notices of Consent were filed, the parties argue that an opportunity to object is unnecessary. *Id*.

The Court disagrees. As an initial matter, the parties misconstrue *Lochren*. The *Lochren* court found that it was unable to evaluate whether the settlement was fair as to the future opt-in plaintiffs rendering final approval premature. 2023 WL 5934466, at *6. The *Lochren* court did not hold that once conditional certification has been granted and notices of consent submitted, the opportunity to object to settlement is unnecessary. *See id*. Also, the Court notes that courts in this District have found after conditional certification that parties must address the opportunity to object to settlement. *See e.g.*, *Campbell v. Pincher's Beach Bar Grill, Inc.*, 2017 WL 3700629, at *1, 2, 3 (M.D. Fla. Aug. 24, 2017), *report and recommendation adopted by*, 2017 WL 3668889 (M.D. Fla. Aug. 25, 2017); (*Dozier v. DBI Services, LLC*, 2021 WL 6061742, at *2 (M.D. Fla. Dec. 22, 2021), *report and recommended adopted by*, 2021 WL 2305814 (M.D. Fla. Jan. 19, 2022). Notably, the court in *Campbell*, found that *regardless* of the opt-in plaintiffs' signed consent forms stating that they designated the class representative to make decisions on all matters pertaining to the lawsuit, the majority of courts only approve settlement after notice and a fairness hearing or the provision of a statement regarding the opt-in plaintiffs' notice of settlement and opportunity to object. *Campbell*, Case No. 2;15-cv-695-JES-M_M at Doc. 60 (M.D. Fla. May 31, 2017). In any event, the Court need not reach the issue of necessity regarding the notice and objection period because the parties have provided a clearer statement along with the Notices of Acceptance.

directly with [the three remaining Opt-in Plaintiffs] concerning their settlement amounts and [ ] notified these individuals that they have the right to object to the settlement." *Id*. Counsel states that the firm "followed up repeatedly" but the three members did not "indicate[ ] that they wish to raise a specific objection or that they wish to be withdrawn from the lawsuit or otherwise excluded from the settlement." *Id*.

On April 12, 2024, Plaintiff Servidori filed another Supplemental Declaration (the Third Richards Declaration), which provides that one of the remaining three Opt-In Plaintiffs—Samenta Joseph—advised counsel that she does not agree to accept the amount recovered on her behalf in this case. Doc. 92. Also, according to the Third Richards Declaration, the remaining two Opt-In Plaintiffs—Alejandra Palma and Sammy Guerrier—have still not responded. *Id.*

Upon due consideration, the Court finds that the parties have provided a clearer statement confirming that the Opt-in Plaintiffs have been provided notice of the settlement and have had an adequate opportunity to object. While it does not appear that the parties specified a deadline to either object or accept (*See e.g.*, Doc. 91-1 at 6), it has been over a month since the first member has signed a Notice of Acceptance. *See id*. Based on counsel's representations that the law firm has directly spoken with the two remaining Opt-in Plaintiffs and advised them of their right to object (Doc. 91-1 at 2), the Court is satisfied there has been notice and an adequate opportunity to raise an objection.

### IV. Conclusion

Based on the foregoing, it is **ORDERED** that:

1. the Motion (Doc. 89) is **GRANTED in part** to the extent that the Settlement Agreement is hereby **APPROVED**, and the case is **DISMISSED with prejudice** as to

Plaintiff Servidori and the 32 Opt-in Plaintiffs who submitted the Notices of Acceptance (*See* Doc. 91-1);

2. the case is **DISMISSED without prejudice** as to Opt-in Plaintiffs Alejandra Palma, Samenta Joseph, and Sammy Guerrier;

3. the remainder of the Motion (Doc. 89) is **DENIED**, including the parties' request for the Court to retain jurisdiction; and

4. the Clerk is directed to **CLOSE** the case and terminate all pending motions.

**ORDERED** in Orlando, Florida on April 22, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE